IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

HCC EMPLOYER SERVICES, INC.,    §
                                §
          Plaintiffs,           §
v.                              §     CIVIL ACTION NO. H-05-1275
                                §
WESTCHESTER COUNTY SURPLUS      §
LINES INSURANCE COMPANY,        §
                                §
          Defendants.           §
                                §

## MEMORANDUM OPINION

Pending before the court[1] are 1) Plaintiff HCC Employer Services, Inc.'s Motion for Summary Judgment, Docket Entry No. 16, and 2) Defendant Westchester County Surplus Lines Insurance Company's Motion for Summary Judgment, Docket Entry No. 25.   The court has considered the motions, all relevant filings, and the applicable law.   For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendant's Motion for Summary Judgment is **DENIED**.

## I.  Case Background

The dispute between the parties in this case concerns professional liability insurance coverage.  HCC Employer Services, Inc. ("Plaintiff" or "HCCES"), the insured, brought this action against Westchester County Surplus Lines Insurance Company[2]

---

[1]     The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry No. 24.

[2]     Plaintiff also initially included Illinois Union Insurance Company ("IU") as a defendant in this case, but all claims against IU were dismissed by the court on May 10, 2006. Agreed Order of Dismissal Without Prejudice, Docket

("Defendant" or "Westchester"), the insurer, seeking a declaration that Defendant must indemnify it for its defense costs incurred and other amounts paid in connection with a previous settlement agreement.[3]  Plaintiff also seeks a declaration that Article 21.55 of the Texas Insurance Code applies to Plaintiff's claim, and that Defendant must pay Plaintiff's attorneys' fees and costs in this action.[4]

**A. The Westchester Insurance Policy**

Defendant issued Plaintiff a Management Protection insurance policy ("the Westchester Policy") that provided professional liability coverage for claims made from May 15, 2002, through May 15, 2003 ("the Policy Period").[5]  The policy provided in part:

> The Insurer shall pay on behalf of the Insureds Loss which the Insureds become legally obligated to pay by reason of any Claim first made by a policyholder or third party client of the Company against the Insureds during the Policy Period or any applicable Discovery Period for any Wrongful Acts by the Insureds or by a person or entity for whom the Insureds are legally responsible in rendering or failing to render Professional Services, if such Wrongful Acts take place prior to the end of the

---

Entry No. 38.

    [3]      HCC Employer Services, Inc.'s Motion for Partial Summary Judgment and Supporting Brief ("Plaintiff's Motion for Summary Judgment"), Docket Entry No. 16, p.2.

    [4]      Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, p.2.

    [5]      Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, Exhibit ("Ex.") 2A, p.1, 21.  The policy, written for HCC Insurance Holdings Inc. ("HCC Holdings"), extends coverage to subsidiaries of HCC Holdings, including Plaintiff. Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, Ex. 2A, p.3.

Policy Period.[6]

It also defined several significant terms.  When considering the "insuring clause" quoted above,

**Claim** means:

1. a written demand for monetary damages,

2. a civil proceeding commenced by the service of a complaint or similar pleading,

3. an arbitration proceeding,

4. a criminal proceeding commenced by a return of an indictment, or

5. a formal administrative or regulatory adjudicatory or investigative proceeding commenced by the filing of a notice of charge, formal investigative order or similar document,

against any Insured, including any appeal therefrom. . . .

**Insured Persons,** either in the singular or plural, means any one or more persons who were, now are[,] or shall become duly elected or appointed directors, trustees or officers of, or employees of, the Company, or, with respect to a Company incorporated outside the United States, their functional equivalent.

**Insureds,** either in the singular or plural, means:

1. the Insured Persons, and
2. the Company.

**Loss** means the amount which the Insureds become legally obligated to pay on account of each Claim and for all Claims in the Policy Period and the Discovery Period, if

---

[6]     Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, Ex. 2A, p.21.

3

exercised, made against them for Wrongful Acts for which coverage applies, including, but not limited to, damages, judgments, any award of pre-judgment and post-judgment interest, settlements and Defense Costs.  Loss does not include (1) any amount for which the Insureds are absolved from payment, (2) taxes, fines or penalties imposed by law, or (3) matters uninsurable under the law pursuant to which this Policy is construed.  This definition does not exclude punitive, exemplary or multiple damages to the extent such damages are insurable under the internal laws of any jurisdiction which has a substantial relationship to the Insureds, the Insurer, this Policy or such Claim.

**Professional Services** means services performed by or on behalf of the Company for a policyholder or third party client of the Company.  The Professional Services must be performed pursuant to a written contract with such policyholder or client for consideration inuring to the benefit of the Company.
. . .

**Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by the Insured Persons in their capacity as such or by the Company or by any person or organization for whom the Insureds are legally responsible.[7]

The policy also contained several exclusions, one of which

("Exclusion 19") stated

[t]he Insurer shall not be liable for Loss on account of any Claim made against any Insured . . . based upon, arising out of or attributable to the underwriting of insurance, including any decisions involving the classification, selection, and renewal of risks as well as the rates and premiums charged to insure and reinsure risks and to redlining.[8]

---

[7]     Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, Ex. 2A, p.21-22.

[8]     Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, Ex. 2A, p.22, 32.

The terms "based upon," "arising out of," "attributable to," and "the underwriting of insurance" that appear in Exclusion 19 were not defined in the policy.

The policy expressly stated that "it shall be the duty of the Insureds and not the duty of the Insurer to defend any Claim," but defined Loss under the Professional Liability Coverage Part to include indemnification of the Insured for Defense Costs.[9]   The policy also committed Defendant to

> advance on behalf of the Insureds covered Defense Costs which the Insureds have incurred in connection with Claims made against them, prior to the disposition of such Claims, provided that to the extent it is finally established that any such Defense Costs are not covered under this Policy, the Insureds, severally according to their interests, agree to repay the Insurer such Defense Costs.[10]

Additionally, in a separate section of the policy, the parties agreed

> [i]f in any Claim under a Liability Coverage Part the Insureds who are afforded coverage for such a Claim . . . incur an amount consisting of both Loss covered by this Policy and loss not covered by this Policy because such Claim includes both covered and uncovered matters, then the Insureds and the Insurer shall allocate such amount between covered Loss and uncovered loss based upon the relative legal exposures of the parties to covered and

---

[9]     Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, Ex. 2A, p.7, 21.  Under the policy, "**Defense Costs** means reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or employees of the Company) incurred by the Insureds in defending or investigating Claims and the premium for appeal, attachment or similar bonds." Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, Ex. 2A, p.3.

[10]     Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, Ex. 2A, p.7.

uncovered matters.[11]

## B. The HCCES-Monumental Relationship & the Branyon Policy

In 1995, Plaintiff[12] entered into an agreement with Monumental Life Insurance Company ("Monumental") to market, underwrite, and administer certain insurance programs.[13]   Under that agreement, Plaintiff sold to Branyon Electrical Maintenance, Inc. ("Branyon") a workers' compensation insurance policy that, by its terms, expired in April 2000.[14]

Prior to the scheduled expiration of the Branyon policy, Monumental decided to terminate its relationship with Plaintiff.[15] Based on that decision, Monumental instructed Plaintiff to inform Branyon and all other policyholders that their policies would not be renewed at expiration.[16]   While Plaintiff notified Branyon of Monumental's decision to non-renew, Plaintiff did not inform the South Carolina Workers' Compensation Commission ("SCWCC"), or its agent, the National Council on Compensation Insurance ("NCCI"),

---

[11]     Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, Ex. 2A, p.8.

[12]     The initial counter-party to the Monumental agreement, Sun Employer Services, was acquired by HCC Holdings in 1998, and renamed HCCES.  Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, p.4; Defendant's Motion for Summary Judgment, Docket Entry No. 25, p.2.

[13]     Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, Ex. 1A, Managing General Underwriter and Administrative Service Agreement.

[14]     Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, p.4.

[15]     Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, p.4.

[16]     Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, p.4.

6

that Monumental would not continue to provide coverage for Branyon.[17]  Because South Carolina insurance laws required that the SCWCC and NCCI be notified by the insurer in order to effectively terminate workers' compensation insurance coverage, Monumental's policy with Branyon remained in effect beyond the April 2000 expiration date.[18]

### D. The Ziegenfus Claim

Though Branyon was notified of Monumental's decision to non-renew its workers' compensation policy, Branyon failed to obtain new workers' compensation insurance.[19]  Therefore, when Branyon employee Michael Ziegenfus ("Ziegenfus") was injured in the course of his employment and could not determine the party responsible for his benefits, the SCWCC scheduled a hearing to settle the matter.[20]

At the hearing,[21] the SCWCC determined that Monumental remained responsible for Ziegenfus' workers' compensation claim because Plaintiff, acting as Monumental's administrator, failed to notify

---

[17]    Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, p.4.

[18]    Westchester Surplus Lines Insurance Company's Motion for Summary Judgment and Response to HCC Employer Services, Inc.'s Motion for Partial Summary Judgment ("Defendant's Motion for Summary Judgment"), Docket Entry No. 25, Ex. 2A, Opinion And Award of the South Carolina Workers' Compensation Commission, p.6.

[19]    Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, p.5.

[20]    See Defendant's Motion for Summary Judgment, Docket Entry No. 25, Ex. 2A, Opinion And Award of the South Carolina Workers' Compensation Commission.

[21]    Due to Plaintiff's failure to properly handle notice from the SCWCC, neither Plaintiff nor Monumental appeared at the hearing.  Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, p.5.

the SCWCC that the policy had expired.[22]  After learning of the
SCWCC's decision, Monumental demanded that Plaintiff indemnify
Monumental for all costs associated with the SCWCC's
determination.[23]

Plaintiff notified Westchester, its insurer, of Monumental's
claim, applied for coverage under the Westchester Policy, and was
denied indemnification based on Exclusion 19.[24]  At approximately
the same time, Monumental filed suit against Plaintiff and the
claims between Monumental and Plaintiff were settled through
arbitration.[25]

Plaintiff now seeks indemnification for the costs incurred
defending the suit against Monumental and for the arbitration award
("the Monumental Claim").[26]

## II.  Summary Judgment Standard

This case is properly before the court on the basis of
diversity jurisdiction.  Absent any indication in the record that
another state's law should apply, the court will apply Texas law.

Summary judgment is warranted when the evidence reveals that
no genuine dispute exists regarding any material fact and the

---

[22]     Defendant's Motion for Summary Judgment, Docket Entry No. 25, Ex. 2A,
Opinion And Award of the South Carolina Workers' Compensation Commission.

[23]     Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, p.6.

[24]     Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, p.6.

[25]     Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, p.6.

[26]     Plaintiff's Motion for Summary Judgment, Docket Entry No. 16.

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Id. at 250.

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  Celotex Corp., 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist which must be resolved at trial.  Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in

9

favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

### III.  Analysis

In the present action, Plaintiff seeks a declaration that the Westchester Policy covers the claims made against it by Monumental, and that Plaintiff is entitled to indemnification by Defendant. Plaintiff also alleges that it is owed certain statutory penalties available under Article 21.55 of the Texas Insurance Code. Defendant responds that Plaintiff's claims are expressly excluded from the policy, and therefore Defendant incurred no obligation in relation to the Monumental Claim.  The court will review each argument in turn.

### A. Ascertaining Coverage and the Underwriting Exclusion

In an insurance contract dispute, the initial burden falls on the insured to demonstrate that coverage exists under an applicable insurance policy. Evergreen Nat'l Indem. Co. v. Tan It All, Inc., 111 S.W.3d 669, 675 (Tex. App.—Austin 2003, no pet.).  However, the insurer bears the burden of establishing the applicability of an exclusion permitting it to deny coverage. Am. States Ins. Co. v.

<u>Bailey</u>, 133 F.3d 363, 369 (5th Cir. 1998) (applying Texas law and placing burden on insurer to demonstrate that the only reasonable interpretation supports exclusion); <u>see also</u> Tex. Ins. Code Ann. § 554.002 (stating that insurer has burden of proof to any avoidance or affirmative defense).

The construction of an insurance policy, like other written contracts, is a question of law to be determined by the court. <u>State Farm Life Ins. Co. v. Beaston</u>, 907 S.W.2d 430, 433 (Tex. 1995); <u>Coker v. Coker</u>, 650 S.W.2d 391, 393-94 (Tex. 1983). Under Texas law, insurance policies are subject to the general principles of contract interpretation and construction. <u>Guaranty Nat'l v. Azrock Indus.</u>, 211 F.3d 239, 243 (applying Texas law); <u>Forbau v. Aetna Life Ins. Co.</u>, 876 S.W.2d 132, 133 (Tex. 1994). All parts of the policy must be read together in order to give effect to the written expression of the parties' intent as a whole and the court must "exercise caution not to isolate particular sections or provisions from the contract as a whole." <u>Provident Life & Accident Ins. Co. v. Knott</u>, 128 S.W.3d 211, 216-17 (Tex. 2004). Terms defined in the policy, if any, control the interpretation of the policy in order to give meaning to the entire policy. <u>Id.</u> at 219.

When a policy as worded can be given "a certain or definite legal meaning or interpretation," it is unambiguous as a matter of law and the court enforces it as written. <u>Coker</u>, 650 S.W.2d 176 at

11

393.   When determining whether an ambiguity exists, the entire policy must be read as a whole and the insurance policy should not be construed to change or enlarge the coverage.  Royal Indem. Co. v. Marshall, 388 S.W.2d (Tex. 1965).   Whether an ambiguity exists in the language of an insurance contract is a question of law for the court to determine.   Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998).

Plaintiff contends that coverage exists under the Westchester Policy because the Monumental Claim falls within the scope of the agreement.[27]   Defendant acknowledges Plaintiff erred in rendering a professional service, but contends that Plaintiff's claim was excluded from coverage based on Exclusion 19, which bars any claim "based upon, arising out of or attributable to the underwriting of insurance . . . ."[28]

The term "underwriting of insurance" is not defined in the insurance policy, and therefore must be given its plain, ordinary, and generally-accepted meaning.   Kelley-Coppedge, Inc., 980 S.W.2d at 464.   Any generally-accepted definition of "the underwriting of insurance" clearly includes the evaluation of risk as an integral

---

[27]      Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, p.8.

[28]      Defendant's Motion for Summary Judgment, Docket Entry No. 25, p.5 ("It is undisputed that the lawsuit and arbitration brought by Monumental against HCCES allege a claim within the scope of coverage under the Westchester Policy.").  Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, Ex. 2A, p.22, 32.

12

part of the process.[29]

While both parties present lengthy arguments related to the plain, ordinary, and generally-accepted definition of "the underwriting of insurance," the court need not explicitly define underwriting to decide this case. Here, the underlying Monumental Claim arose out of Plaintiff's negligent failure to properly provide notification of a policy's ending date to a regulatory body.[30] This failure involved neither the underwriting of insurance nor any decision involving the classification, selection, and renewal of risks, or the rates and premiums charged to insure and reinsure risks. As Plaintiff's wrongful act was simple negligence, it falls within the scope of the Westchester Policy.[31]

Alternatively, Defendant argues that Exclusion 19 applies because Monumental's decision to terminate the insurance policies could be considered an underwriting decision, and that because that

---

[29]    See, e.g., Group Life & Health Ins. Co. v. Royal Drug Co., 440 U.S. 205, 212, 213, 214, 221, 243, 244, 251 (U.S. 1979). (repeatedly using the term "underwriting" synonymously with "spreading of risk" when affirming a Fifth Circuit opinion holding certain agreements between insurance companies and pharmacies were not "the business of insurance," and thus were not exempt under the McCarran-Ferguson Act); See also, e.g., Wilting v. Progressive County Mut. Ins. Co., 227 F.3d 474 (5th Cir. 2000) (holding that the decision to issue an insurance policy was an essential part of underwriting, and that an essential part of the decision to issue an insurance policy involved obtaining a credit report in order to weigh the risks involved).

[30]    Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, p.12.

[31]    Defendant's Motion for Summary Judgment, Docket Entry No. 25, p.13. The court considers at least some form of risk assessment to be an integral component of the plain, ordinary meaning of "the underwriting of insurance." Because it is clear, in the instant case, that Plaintiff's actions did not involve any risk assessment, the court will not examine Monumental's decision to non-renew Plaintiff's policies even though that decision may or may not have taken into account risk considerations.

13

decision triggered Plaintiff's negligence, the negligence was based upon, arose out of, or was attributable to the underwriting of insurance.[32]  Though Texas courts broadly read phrases like "arising out of," Defendant's argument strains the plain meaning of the contract.

The insurance policy defines "wrongful act" as "any error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted ***by the Insured Persons*** in their capacity as such or by the Company or by any person or organization for whom the Insureds are legally responsible" ***(emphasis added).***[33]  The Westchester Policy covers Plaintiff's acts, not those of third parties.  The court cannot read Exclusion 19 so broadly as to include acts and decisions made by actors who are not parties to the insurance policy at issue. Therefore, the court will not look to decisions and actions made by Monumental, wholly outside of Plaintiff's control, when applying policy exclusions.  Because Defendant cannot establish that Plaintiff's wrongful act arose from the underwriting of insurance, Defendant has not carried its burden to prove that the Monumental Claim is excluded from the policy.

After considering the plain reading of the Westchester policy,

---

[32]      Defendant's Motion for Summary Judgment, Docket Entry No. 25, p.13.

[33]      Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, Ex. 2A, p.22.

Defendant's admissions, and the circumstances that gave rise to the Monumental claim, the court finds that Plaintiff's claim was within the scope of the policy, was not excluded from coverage, and must be indemnified by Defendant.

### B. Article 21.55

Article 21.55 of the Texas Insurance Code ("Article 21.55") was designed to ensure that insurance companies promptly pay valid claims made by their insureds.  Tex. Ins. Code art 21.55 (2004).[34] Under the law, insurers face an 18-percent penalty if they fail to meet certain statutory deadlines related to the payment of those claims.  Id.  Plaintiff alleges that Article 21.55 applies to its claims and that by refusing to approve and pay the Monumental Claim, Defendant failed to meet the required deadlines.  Therefore, Plaintiff concludes, the penalties prescribed by the law attach both to Plaintiff's defense costs, and to the amounts paid by Plaintiff to resolve the Monumental Claim.

Citing some disagreements among both the state and federal courts with interpreting Article 21.55, Defendant contends that Plaintiff's losses do not qualify for Article 21.55 penalties because they do not fall within the statute's definition of

---

[34]   Article 21.55 was repealed by Stats. 2003 Ch. 1274, effective April 1, 2005.  It is now codified at Tex. Ins. Code § 542.051, and its repeal has no bearing on the instant case.

"claim."[35]  Defendant correctly notes that the "cornerstone of the
debate centers on" Article 21.55's definition of "claim."

> Article 21.55 provided
>
> [i]n all cases where a claim is made pursuant to a policy
> of insurance and the insurer liable therefor is not in
> compliance with the requirements of this article, such
> insurer shall be liable to pay the holder of the policy,
> or the beneficiary making a claim under the policy, in
> addition to the amount of the claim, 18 percent per annum
> of the amount of such claim as damages, together with
> reasonable attorney fees. If suit is filed, such attorney
> fees shall be taxed as part of the costs in the case.

Tex. Ins. Code art. 21.55 § 6.  The statute defined "claim" as "a
first party claim made by an insured or a policyholder under an
insurance policy or contract or by a beneficiary named in the
policy or contract that must be paid by the insurer directly to the
insured or beneficiary," but did not define the term "first party."
Id. § 1(3).  The code also instructed that Article 21.55 "shall be
liberally construed to promote its underlying purpose which is to
obtain prompt payment of claims made pursuant to policies of
insurance." Id. § 8.

   This court, sitting on the basis of diversity, must decide
questions of state law "as it believes the state's supreme court

---

[35]      Defendant's Motion for Summary Judgment, Docket Entry No. 25, p.21.
Though Defendant first contends that Plaintiff's Article 21.55 claim is precluded
by a finding that the underlying claim is not covered, that contention is negated
by the court's finding, supra, that Defendant did have a duty to indemnify
Plaintiff's loss.  Additionally, Defendant notes that the Fifth Circuit in Lamar
Homes, Inc. v. Mid Continent Cas. Co. recently certified to the Texas Supreme
Court three questions related to various aspects of Article 21.55.  Lamar Homes,
428 F.3d 193, 200 (5th Cir. 2005).  While the Texas Supreme Court's response
would be instructive, the instant case presents distinct issues from those
certified in Lamar Homes.

would." Ridglea Estate Condo. Ass'n v. Lexington Ins. Co., 2005
U.S. App. LEXIS 16724 (5th Cir. 2005) (citing Erie R.R. v.
Tompkins, 304 U.S. 64 (1938)). "If a state's highest court has not
ruled on the issue in question, a federal court must determine, to
the best of its ability, what the highest court of the state would
decide." United Teacher Assocs. Ins. Co. v. Union Labor Life Ins.
Co., 414 F.3d 558, 566 (5th Cir. 2005).  This determination is
sometimes referred to as an "Erie Guess." See Rogers v. Corrosion
Prods., 42 F.3d 292, 295 (5th Cir. 1995).  "While decisions of
intermediate state appellate courts provide guidance, they are not
controlling." Id. at 565.

The Texas Supreme Court defines a first-party claim as "one in
which an insured seeks recovery for the insured's own loss," and a
third-party claim, as one in which "an insured seeks coverage for
injuries to a third party." Universe Life Ins Co. v. Giles, 950
S.W.2d 48, 53 (Tex. 1997); See also, Medical Care Am., Inc. v.
Nat'l Union Fire Ins. Co., 341 F.3d 415, 425 (5th Cir. 2003).
While Texas appellate courts and some federal courts applying Texas
law have disagreed over whether "duty to defend" claims qualify as
first-party claims under the supreme court's definitions, this
court finds that the claims in the instant case can be classified
relatively easily under Texas law.  Because the state supreme court
has not yet issued an opinion resolving the more general conflict
at the state appellate level, though, this court will base its

"Erie guess" on the language of Article 21.55, Texas Supreme Court and appellate court decisions applying that statute, and other federal courts' decisions that provide reasoning for their interpretation of the law.

This court finds the recent case Rx.com, Inc. v. Hartford Fire Ins. Co. to provide the most thorough review of the issue. Rx.com, 364 F. Supp. 2d 609 (S.D. Tex. 2005). In Rx.com, the plaintiff sued its liability insurer for breaching an insurance policy. Id. Among other allegations, the plaintiff claimed that the defendant's refusal to defend plaintiff in an underlying suit constituted a violation of Article 21.55. Id. The defendant moved to dismiss that claim on the basis that Article 21.55 "does not apply to an insured's demand for a defense against a third-party suit." Id. at 610. After an extensive examination, the Rx.com court held that the Texas Supreme Court would apply Article 21.55 to an insured's demand for defense. Id. at 620.

As the Rx.com court noted, applicable federal and Texas state cases generally classify an insurer's duty to defend as a first-party claim. Rx.com, 364 F. Supp. 2d at 612; Accord Westcott Holdings, Inc. v. Monitor Liab. Managers, Inc., 2005 U.S. Dist. LEXIS 20149 at 21 (S.D. Tex. 2005) (citing Meritage Corp. v. Clarendon National Ins. Co., 2004 WL 2254215, at *6 (N.D. Tex. 2004)); Luxury Living, Inc. v. Mid-Continent Cas. Co., 2003 U.S. Dist. LEXIS 24505 (S.D. Tex. 2003). This "majority view" holds

18

that, although typically part of a liability policy that would be considered "third-party," the duty to defend is a form of first-party insurance. Rx.com, 364 F. Supp. 2d at 616 (citing Mt. Hawley Ins. Co. v. Steve Roberts Custom Builders, Inc., 215 F. Supp. 2d 783, 794 (N.D. Tex. 2002); Ellen S. Pryor, Mapping the Changing Boundaries of the Duty to Defend in Texas, 31 Tex. Tech. L. Rev. 869, 914 n.317 (2000)).

In third-party insurance claims, the interests of the insured and insurer are typically aligned against a third party. See Westcott Holdings, 2005 U.S. Dist. LEXIS 20149 (citing a concurring opinion in Giles, 950 S.W.2d 48, 60 (Tex. 1997). As the Fifth Circuit explained in Medical Care, when a claim arises that concerns the relationship between the insurer and the insured, that claim can become a first-party claim. Medical Care, 341 F.3d at 425.

In the instant case, the Westchester Policy expressly disavowed Defendant of any traditional "duty to defend."[36] Defendant did, however, commit to cover defense costs that constitute a "Loss" to Plaintiff, and to "advance on behalf of the Insureds covered Defense Costs which the Insureds have incurred in connection with Claims made against them . . . ."[37] The court finds

---

[36]   Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, Ex. 2A, p.7.

[37]   Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, Ex. 2A, p.7, 21.

19

that a claim for these "covered Defense Costs" clearly constitutes a first-party claim.   Though not the standard "duty to defend" claim, a claim for these costs concerns only the relationship between Plaintiff and Defendant, and no third party.   Here, Plaintiff suffered a direct loss in the amount of its defense costs.   Its claim seeks recovery for that loss – as opposed to any loss suffered by a third party – and involves amounts that must be paid by the insurer directly to the insured.   Therefore, Plaintiff's claim is a covered claim under Article 21.55.

A similar analysis may be applied to Plaintiff's claim against Defendant for the amounts paid to settle the Monumental lawsuit. Here, too, Plaintiff suffered a direct "Loss," as defined in the policy, in the amount of the arbitration award it paid to Monumental.   Plaintiff's claim against Defendant now simply seeks recovery for that loss, and involves amounts that must be paid by the insurer directly to the insured.   Therefore, this claim also constitutes a claim covered under Article 21.55.

Considering the foregoing, the court concurs with the vast majority of Texas courts and federal courts construing Texas law, and believes that the Texas Supreme Court would classify all of Plaintiff's claims as "first party."   Therefore, the court finds that Article 21.55 applies to Plaintiff's claims as of the date Plaintiff suffered the financial loss, and declares that Defendant is responsible for any penalties that attach thereto.

### C. Allocation of Costs & Attorneys' Fees

Lastly, Defendant contends that Plaintiff's motion for summary judgment must be rejected because Plaintiff allegedly failed to allocate the settlement and defense costs between excluded and potentially covered claims.[38]  Defendant notes that "there were two aspects of the Monumental claim – [an] accounting claim, which is indisputably not the subject of this lawsuit, and the Ziegenfus Claim."[39]  Finally, Defendant asserts that Plaintiff "offers no evidence as to the amount of [its] defense costs or that they were reasonable and necessary," and concludes that Plaintiff's "motion should be denied on this basis alone."[40]

Plaintiff first responds that "the accounting claims were settled separately and indemnification is not sought for those claims."[41]  The court agrees, finding no evidence in the record that indicates Plaintiff's claim includes anything other than costs associated with the Ziegenfus claim.  More importantly, Plaintiff's motion seeks only a declaration by this court that Defendant is

---

[38]    Defendant's Motion for Summary Judgment, Docket Entry No. 25, p.19.

[39]    Defendant's Motion for Summary Judgment, Docket Entry No. 25, p.19.

[40]    Defendant's Motion for Summary Judgment, Docket Entry No. 25, p.20.

[41]    Plaintiff's Response to Westchester's Cross-Motion for Summary Judgment and Reply in Support of its Motion for Summary Judgment ("Plaintiff's Response"), Docket Entry No. 32, p.11.  See also, Plaintiff's Motion for Summary Judgment, Docket Entry No. 16, p.6 ("Monumental's lawsuit consisted of the Ziegenfus Claim and a group of accounting related claims. The accounting claims were settled separately. For purposes of this Plaintiff's Motion for Summary Judgment, the defined term 'Monumental Claim' only includes portions of the lawsuit attributable to the Ziegenfus claim.").

obligated to indemnify Plaintiff for certain costs; the questions regarding the actual amount and reasonableness of damages to be awarded to Plaintiff are not presently before this court.

Therefore, Defendant's argument that Plaintiff has not adequately allocated or supported its damages is not ripe, and is irrelevant to the motions currently considered by the court.

### IV.  Conclusion

For all of the foregoing reasons, the court finds that, as a matter of law, the Westchester Policy obligated Defendant to indemnify Plaintiff for its defense costs and other amounts paid in connection with the Monumental Claim.  Additionally, the court finds that Plaintiff's claims are covered claims under Article 21.55 of the Texas Insurance Code, and Defendant is liable for any penalties assessed thereunder.

Therefore, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

SIGNED at Houston, Texas, this 5th day of June, 2006.

Nancy K. Johnson
United States Magistrate Judge